UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ANGELA GOINS, o/b/o J.D.G.,

                      Plaintiff,        **6:16-cv-06398-MAT**

                                       **DECISION AND**
                                       **ORDER**
        -vs-

NANCY A. BERRYHILL, Acting Commissioner
of Social Security,

                      Defendant.

---

## I. Introduction

Represented by counsel, Angela Goins ("Plaintiff") has brought this action on behalf of her school-age daughter ("J.D.G." or "Claimant") pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security[1] ("defendant" or "the Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion is granted and

---

[1] Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security on January 23, 2017. The Clerk of the Court is instructed to amend the caption of this case pursuant to Federal Rule of Civil Procedure 25(d) to reflect the substitution of Acting Commissioner Berryhill as the defendant in this matter.

this matter is reversed and remanded solely for the calculation and payment of benefits.

## II. Eligibility for Childhood SSI

For the purpose of evaluating eligibility for childhood SSI benefits, an individual under the age of 18 is considered disabled if he has a medically determinable physical or mental impairment that results in marked and severe functional limitations, and that can be expected to result in death, or that has lasted, or can be expected to last, for a continuous period of not less than 12 months. *See* 42 U.S.C. § 1382c(a)(3)(C)(I). The regulations establish a sequential evaluation for determining whether a child claimant meets this definition of disabled, and requires the claimant to show: (1) that he is not working; (2) that he has a severe impairment or combination of impairments; and (3) that his impairment or combination of impairments meets or medically equals the listings in Part A or B of Appendix 1 to Subpart P of Part 404 of the Social Security Administration's regulations. *See* 20 C.F.R. § 416.924. A child's functional limitations are evaluated in the context of six broad functional areas, called "domains of functioning." *See* 20 C.F.R. § 416.926a(b)(1). If a child has marked limitations in two domains or an extreme limitation in one domain, the child's impairment or combination of impairments is functionally equivalent to a listed impairment. *See* 20 C.F.R. § 416.926a(d).

## III. Procedural History

On April 25, 2012, Plaintiff protectively filed an application for SSI on behalf of J.D.G., her minor daughter, alleging disability since November 1, 2011 (T. 139-47). The SSA denied the application, and Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (T. 86-103.) ALJ Edward I. Pitts held a hearing on January 24, 2014. (T. 44-85.) On April 25, 2014, the ALJ determined that J.D.G. was not disabled. (T. 25-40.) Plaintiff's request for Appeals Council review was denied on April 6, 2016, making the ALJ's decision the final decision of the Commissioner (T. 1-5.) Plaintiff subsequently filed this action.

The Court assumes the parties' familiarity with the facts of this case, which will not be repeated here. The Court will discuss the record further below as necessary to the resolution of the parties' contentions.

## IV. The ALJ's Decision

In considering plaintiff's claim, the ALJ applied the three-step sequential evaluation for evaluating child disability claims. *See* 20 C.F.R. § 416.924. At step one, the ALJ determined that J.D.G. had not engaged in substantial gainful activity at any time relevant to this decision. (T. 31.) At step two, the ALJ found that J.D.G. suffered from the severe impairments of chronic abdominal pain, obesity, and possible ADHD or other learning disorder. (*Id.*) At step three, the ALJ found that J.D.G. did not

3

have an impairment or combination of impairments that met or medically equaled any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) The ALJ further found that J.D.G.'s impairments were not functionally equivalent to a listed impairment. (T. 31-34.) Specifically, the ALJ determined that J.D.G. had a marked limitation in the domain of Attending and Completing Tasks; and less than marked limitations in the domains of Acquiring and Using Information, Interacting and Relating with Others, Moving About and Manipulating Objects, Caring for Himself, and Health and Physical Well-Being. (T. 34-39.) The ALJ therefore concluded that J.D.G. was not disabled within the meaning of the Act. (T. 39.)

**V. Scope of Review**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000).

**VI. Discussion**

Plaintiff argues that the ALJ's functional equivalence analysis is not supported by substantial evidence and was the product of legal error. (Docket 10 at 7.) The Commissioner contends that substantial evidence supports the ALJ's decision. (Docket 13 at 11.)

**A. The ALJ's Finding of a Less than Marked Limitation in Acquiring and Using Information**

In the Acquiring and Using Information domain, the Commissioner must consider how well a child acquires or learns information, and how well he can use the information he has learned. *See* 20 C.F.R. § 416.926a(g). The regulations direct the ALJ to take into account that a child of J.D.G.'s age "should be able to learn to read, write, and do math, and discuss history and science." 20 C.F.R. § 416.926a(g)(2)(iv). The child also "should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing . . . ideas, and by understanding and responding to the opinions of others." *Id.* A child with limited functioning would show: (1) the inability to "demonstrate understanding of words about space, size, or time;" (2) the inability to demonstrate rhyming skills; (3) "difficulty recalling important things [] learned in school yesterday;" (4) "difficulty solving mathematics questions or computing arithmetic answers;" and (5) the ability to "talk only in short,

simple sentences." 20 C.F.R. § 416.926a(g)(3)(i)-(v).

A "marked" limitation means that a claimant's impairment "interferes seriously with [his] ability to independently initiate, sustain, or complete activities. " 20 C.F.R. § 416.926a(e)(2). "[A claimant's] day-to-day functioning may be seriously limited when [her] impairment(s) limits only one activity or when the interactive and cumulative effects of [her] impairment(s) limit several activities.  'Marked' limitation also means a limitation that is 'more than moderate' but 'less than extreme.'" 20 C.F.R. § 416.926a(e)(2).

In assessing J.D.G. under this domain, the ALJ noted that J.D.G. was progressing satisfactorily towards achieving her IEP goals or had already achieved them, and she could follow two-step directions.  (T. 35.) The ALJ found that statements in the record by Plaintiff's mother supported this conclusion.  (*Id.*)  The ALJ further found that a teacher questionnaire completed by Cynthia Randall, J.D.G.'s resource room teacher, did not highlight any issues in this domain.  The ALJ appears to have placed the greatest emphasis on the child's psychiatric evaluation conducted in August 2012, the report of state agency medical consultant, Dr. Mary Ann Moore, which observed that Plaintiff was able to recall 3/3 objects immediately, 2/3 objects after five minutes, and was also able to restate four digits forward.  (*Id.*)  Based on these assessments, the ALJ found that J.D.G. had less than marked limitations in Acquiring and Using Information.

6

At first glance, this determination appears to have substantial support. However, a review of the record evidence shows that the ALJ failed to apply the proper legal standard as he did not give proper weight to the evidence evaluated and ignored substantial evidence in the record. *See Smith ex rel. M.M.S. v. Comm'r of Soc. Sec.*, No. 16-CV-362-FPG, 2017 WL 3404760, at *4 (W.D.N.Y. Aug. 9, 2017) ("The Court finds that the ALJ's conclusion in this domain, which was limited to a single paragraph, is not supported by substantial evidence and that he improperly weighed the evidence of record."). Indeed, there is no evidence that the ALJ considered anything other than reports in record evidence that supported a finding of a less than marked limitation, while ignoring conflicting evidence in some of those same reports.

Ms. Randall's teacher questionnaire, which did not highlight any limitations and which the ALJ purported to give "great weight," was not completed with respect to Acquiring and Using Information (T. 33, 35, 215.) Indeed, Ms. Randall completed all sections (checking boxes, circling ratings, and providing commentary) of all odd-numbered pages. However, she left all even-numbered pages, including the section on *Acquiring and Using Information*, blank from top to bottom with the exception of the signature page. (T. 214-21.) It is unclear why Ms. Randall left the even-numbered pages blank. Yet, if Ms. Randall declined to "highlight" any issues, logic suggests she would have, at the very least, placed a checkmark next to the box at the very top of the page indicating

7

that there were "NO problems observed in this domain." (T. 215.) Thus, the incomplete questionnaire offers no support for the ALJ's finding. Moreover, the section of the questionnaire addressing Attending and Completing Tasks suggests that Ms. Randall would have found problems in the Acquiring and Using Information domain because she stated that J.D.G. "struggles in *all* academic activities" and requires almost "constant 1 to 1 assistance." (T. 216 (emphasis added).) Despite addressing it in his decision with respect to a different domain, the ALJ did not acknowledge this in his discussion of the Acquiring and Using Information domain even though the SSA recognizes that "any given impairment may have effects in more than one domain." 20 C.F.R. § 416.926a(c) (effective June 13, 2011 to June 11, 2015); *see also Encarnacion ex rel. George v. Astrue*, 568 F.3d 72, 73-74 (2d Cir. 2009). This also illustrates how "it would be incorrect to assume that th[e] child's AD/HD causes limitations only in the domain of 'Attending and completing tasks.'" SSR 09-1p; *see also Smith*, 2017 WL 3404760, at *6.

The ALJ also cited as support for the less than marked finding a 2012-2013 Progress Report for Goals and Objectives evaluating J.D.G.'s progress toward meeting her Individualized Education Plan ("IEP") goals because it demonstrated that J.D.G. was making satisfactory progress toward meeting those goals or had already met them. (T. 35.) To the contrary, a review of the report shows that J.D.G. was progressing only "gradually" in increasing her Words

8

Correct Per Minute ("WCPM") to twenty words (reading), and in understanding and using learned vocabulary words from classroom curriculum (speech/language). (T. 261-64.) The report also observed that despite her gradual progress to twenty-three WPCM, she remained "significantly below" the seventy-two WPCM expected reading rate. (T. 262, 270.)

Furthermore, the ALJ supported his finding by referencing information from reports without any indication as to whether he considered information in those reports contradicting his finding of a less than marked limitation. For example, Dr. Moore's August 2012 Report, which the ALJ credited, found J.D.G. could not understand the digits backwards test, perform simple calculations, understand the serial threes test, and had fair to poor insight and judgment. (T. 326-27.) The ALJ also cited other 2010 IEPs completed while J.D.G. attended elementary school in the Corning-Painted Post Area School District suggesting J.D.G. was able to "follow simple two-step directions." (T. 35.) Those very same IEPs documented that J.D.G. had trouble recalling auditory information, could not read first grade reading comprehension passages, could not read independently, and did not know her complete alphabet. (T. 161-63.) Teachers needed to simplify all instructions and read all assignments to her. (T. 166-67.) Further, the test results from first grade show that J.D.G. was in the first percentile in word discrimination, second percentile in auditory comprehension, and fifth percentile in auditory reasoning.

9

(T. 153.)  In evaluating the domains of functioning, ALJs may not "cherry pick" evidence by "crediting evidence that supports administrative findings while ignoring conflicting evidence from the same source." *Younes v. Colvin*, No. 1:14-CV-170 DNH/ESH, 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015) (citations omitted). "'Cherry picking' can indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both." *Id.* (citing *Genier v. Astrue*, 606 F.3d 46, 50 (2d Cir. 2010)).

Still other evidence demonstrates J.D.G.'s marked limitation in Acquiring and Using Information.  As the ALJ acknowledged, the school district held J.D.G. back while she was in kindergarten, and she was recommended for special education classes.  (T. 36.) Moreover, she began achieving the goal of learning first grade sight words only after entering *second* grade.  (T. 261.)  By the time of the hearing, Plaintiff was in third grade and recalled, with some hesitation, teacher and sibling names.  (T.50-52.)

Accordingly, for all the reasons stated, the Court finds that the ALJ erred when he weighed the evidence of record and his finding in the Acquiring and Using Information domain is not supported by substantial evidence. *See Smith*, 2017 WL 3404760, at *4 (concluding ALJ improperly weighed evidence and finding of less than marked limitation not supported by substantial evidence where ALJ cherry-picked or otherwise misled with respect to record evidence). Moreover, the Court finds that substantial evidence in

the record supports that J.D.G. has a marked limitation in the Acquiring and Using Information domain.

### B. The ALJ's Finding of a Marked Limitation in Attending and Completing Tasks

The domain of Attending and Completing Tasks considers, inter alia, a child's ability to (1) "focus and maintain attention; (2) "begin, carry through, and finish activities or tasks" and (3) "initiate and maintain attention, including the child's alertness and ability to focus on an activity or task despite distractions." SSR 09-4P; *see* 20 C.F.R. § 416.926a(h). For example, school-age children, between 6 and 12, tend to (1) focus "attention in a variety of situations in order to follow directions, complete[] school assignments, and remember[] and organize[] school-related materials"; (2) concentrate "on details and avoid[] making careless mistakes"; (3) sustain "attention well enough to . . . read alone, and complete family chores"; and (4) complete "a transition task without extra reminders or supervision (for example, . . . going to another classroom at the end of a lesson)." SSR 09-4P. Examples of limitations include that the child: (1) "[r]epeatedly becomes sidetracked from activities or frequently interrupts others"; (2) "[n]eeds extra supervision to stay on task"; and (3) "[c]annot plan, manage time, or organize self in order to complete assignments or chores." *Id.* A child that only "pays attention well with frequent prompting" "is not paying attention as appropriately, effectively, or

11

independently as children of the same age who do not have impairments." *Id.* Moreover, "school-age children with AD/HD may have limitations in multiple domains" the effects of which "can result in limitations in the domain of 'Acquiring and Using Information'; for example, by undermining academic performance." *Id.*

An extreme limitation "interferes very seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I). With respect to day-to-day functioning, a person with an extreme limitation "may be very seriously limited" if their impairment or impairments limits one or several activities. *Id.* An extreme limitation "does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning [one] would expect to find on standardized testing with scores that are at least three standard deviations below the mean." 20 C.F.R. § 416.926a(e)(3)(I).

In assessing J.D.G. for Attending and Completing Tasks, the ALJ referenced Ms. Randall's questionnaire in observing that J.D.G. had several serious or very serious problems and struggled in all academic activities. (T. 36.) The ALJ also credited Plaintiff's statements in the record that J.D.G. is distractable, fidgets, squirms, and is unable to finish tasks. (*Id.*) However, the ALJ found that because J.D.G. had been held back only once and her mother refused recommended special education classes she was not as limited as alleged. (*Id.*) Moreover, the ALJ appeared to again

12

accord significant weight to evidence in the record showing J.D.G.'s progress with respect to her IEPs. (*Id.*) Based on these assessments the ALJ found that J.D.G. had only a marked limitation in Attending and Completing Tasks.

However, a review of the record evidence again shows that the ALJ cherry-picked evidence, failed to give proper weight to the evidence he evaluated and ignored substantial evidence in the record. *See Smith*, 2017 WL 3404760, at *4-5; *Younes*, 2015 WL 1524417, at *8. Ms. Randall's questionnaire provided a detailed assessment of J.D.G. in Attending and Completing Tasks. (T. 216.) Ms. Randall found that J.D.G. had problems in twelve of thirteen categories in the domain. (*Id.*) In the questionnaire, "a very serious problem" was the most problematic a child's abilities could be rated and "hourly" is the most frequent such an issue could arise. (T. 216.) Ms. Randall found that J.D.G. had a very serious problem on an hourly basis in five of the thirteen categories including: (1) paying attention when spoken to directly, (2) sustaining attention during play/sports activities, (3) focusing long enough to finish assigned activity or task, (4) refocusing to task when necessary, and (5) completing work accurately without careless mistakes. (*Id.*) Ms. Randall further found that J.D.G. had a "serious problem" on an hourly basis in an additional four categories: (1) carrying out multi-step instructions, (2) organizing own things or school materials, (3) completing class/homework assignments, and (4) working at

reasonable pace/finishing on time.  (*Id.*)  Ms. Randall summarized J.D.G.'s abilities by stating that she "cannot maintain attention and needs almost constant 1 to 1 assistance in the general education setting."  (*Id.*)

J.D.G.'s most recent IEP noted that, for many goals addressing Attending and Completing Tasks, progress was only gradual rather than satisfactory or achieved. (T. 262.)  The IEP found J.D.G. was able to follow three-step directions, but her accuracy fluctuated between "25 and 75%" and "depend[ed] greatly on her focus and attention to task." (T. 264, 271.)  She "require[d] refocusing and redirecting throughout the day to help her maintain on task, as she is easily distracted, often in a passive manner."  (T. 270, 272.)

Even though J.D.G. had only been held back once, Ms. Randall noted that J.D.G. was held back in kindergarten, she "continue[d] to struggle in first grade," and was "radically behind her same age peers."  (T. 220.)  Indeed, her struggles in the first grade continued in second grade where she had difficulty learning *first* grade sight words.  (T.261.)

Moreover, Plaintiff addressed her reluctance to put J.D.G. in special education classes as her desire for J.D.G. to have a normal life and the fact that she is already picked on by her school peers for frequently urinated on herself.  (T. 68, 81.)

Accordingly, for all the reasons stated, the Court finds that the ALJ erred when he weighed the evidence of record and his finding in the Attending and Completing Tasks domain is not

14

supported by substantial evidence. *See Smith*, 2017 WL 3404760, at *4. Moreover, the Court finds that substantial evidence in the record supports that J.D.G. has an extreme limitation in the Attending and Completing Tasks domain.

**C.    Remand for Calculation of Benefits**

The standard for directing a remand for calculation of benefits is met when the record persuasively demonstrates the claimant's disability, *see Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980), and where there is no reason to conclude that the additional evidence might support the Commissioner's claim that the claimant is not disabled, *see Butts v. Barnhart*, 388 F.3d 377, 385–86 (2d Cir. 2004). Because the Court finds that plaintiff's disability is persuasively demonstrated by this record, no useful purpose would be served by a remand for further consideration. Moreover, the Second Circuit "has recognized delay as a factor militating against a remand for further proceedings where the record contains substantial evidence of disability." *McClain v. Barnhart*, 299 F. Supp. 2d 309, 310 (S.D.N.Y. 2004) (citations omitted). Reversal for calculation of benefits is particularly appropriate in this case because plaintiff's benefits claim has been pending for more than five years. In fact, at the hearing nearly four years ago, Plaintiff declined representation after discussing it with the ALJ on the record, explaining that she "would rather go forward today because of the length of time and just try to make a decision." (T. 48.) Considering the

significant delay J.D.G. has already experienced, and the convincing evidence of disability in this case, the Court remands this case solely for the calculation and payment of benefits.

## VII. Conclusion

For the foregoing reasons, the Court finds that the Commissioner's decision is not supported by substantial evidence. Defendant's motion for judgment on the pleadings is denied, and Plaintiff's motion for judgment on the pleadings is granted. The Commissioner's decision is reversed, and the case is remanded for calculation and payment of SSI benefits. The Clerk of Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

**S/Michael A. Telesca**

‎　　　　　　　　　　　　　　　HON. MICHAEL A. TELESCA
‎　　　　　　　　　　　　　　　United States District Judge

Dated: November 3, 2017
　　　　Rochester, New York.